UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CAITLYN ZARRA )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>FAIRFIELD UNIVERSITY )<br>Defendant )<br>) | Civil Action No.  3:21-790 |

**COMPLAINT**

**I.      PRELIMINARY STATEMENT**

1. Plaintiff Caitlyn Zarra applied to and was accepted into the Second-Degree Nursing Program at Fairfield University. After her admission, Ms. Zarra, a person with a disability, requested a reasonable accommodation to reduce the impact of her disability on academic functioning. For months, Ms. Zarra's attempts to engage in a meaningful interactive process were met with delay and non-responses by the administration at Fairfield University, who throughout the process try to dissuade Ms. Zarra from pursuing the degree at Fairfield University altogether. Finally, weeks before the program was set to start, Ms. Zarra was denied the reasonable accommodation and not permitted to pursue the nursing program. This action seeks compensatory damages, costs and attorney's fees for the deprivation of rights guaranteed pursuant to the provisions of Section 504 of the Rehabilitation Act of 1972. Plaintiff claims that Fairfield University, a

recipient of federal funding unlawfully excluded her from participation in, denied the benefits of, or subjected her to discrimination, by reason of her disability.

2. Plaintiff requests a trial by jury on all issues triable to a jury.

## II.    JURISDICTION AND VENUE

3. Subject matter jurisdiction is based on the existence a federal question pursuant to 28 U.S.C. § 1331.

4. Supplemental jurisdiction exists over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this complaint occurred within this district. Attorney's fees and costs are sought pursuant to 29 U.S.C. § 794a.

## III.    PARTIES

6. Plaintiff Caitlyn Zarra is a resident of Greenwich, Connecticut.

7. Defendant Fairfield University is a Catholic, Jesuit University, located in Fairfield, Connecticut, and is a recipient of Federal financial assistance.

## IV.    FACTS

8. Ms. Zarra was an undergraduate student at Fairfield University.

9. In June 2019, she received her degree, a Bachelor of Science in Chemistry from Fairfield University.

10. Ms. Zarra is a person with disabilities as that term is defined by 34 C.F.R. § 104.3 in that she has a physical impairment which substantially limits one or more major

life activities, has a record of such impairment, or is regarded as having such an impairment.

11. At all times relevant to this complaint, Ms. Zarra suffers from lumbar spine impairments, including but not limited to degenerative disc herniations.

12. Ms. Zarra dreamed of being in the medical field and while she was finishing up her undergraduate degree at Fairfield University, she decided to pursue a career in nursing.

13. Ms. Zarra took a series of prerequisite courses that were required to be considered for enrollment in Fairfield University's Second-Degree Nursing Program.

14. In October 2019, Ms. Zarra was accepted into the 2020 Cohort for the Second-Degree Nursing Program at Fairfield University, scheduled to start in the Spring of 2020.

15. Ms. Zarra was thrilled that she had been admitted to the prestigious Nursing program.

16. Its admission website touts that "Nursing graduates from Fairfield's prestigious Egan School are highly sought after for employment due to the quality, training, and reputation of our educational program. The Accelerated Second-Degree Nursing Program (ASDNU) is a full-time cohort program that allows students with a bachelor's degree to obtain an additional bachelor's degree in nursing and take advantage of the many exciting and diverse career opportunities available in the healthcare field."

17. Its admission website touts the Egan School of Nursing at the #1 "Best College for Nursing in Connecticut" according to Niche's 2021 Best Colleges, as a "Top 5 Nursing School in New England" according to 2020 Nursing Schools Almanac, "#2 Nursing Program in Connecticut" according to College Factual and "Top 5% Nursing Program in the Nation".
18. In October 2019, Plaintiff paid Fairfield University a $500 security deposit.
19. After submitting her security deposit, Plaintiff emailed Carole Pomarico, the Director for the Second-Degree Nursing Program to discuss her disability and lifting restriction.
20. On January 30, 2020, Ms. Zarra met with Ms. Pomarico, who instructed Ms. Zarra to file a formal accommodation request with the Office of Accessibility.
21. On February 13, 2020, Ms. Zarra following Ms. Pomarico's instruction made a formal request for an accommodation, providing medical documentation to support the request.
22. On February 24, 2020, Ms. Zarra met with the Office of Accessibility at Carole Pomarico's instruction.
23. At that meeting, Ms. Zarra discussed a 20-pound lifting restriction. She was told that the OOA would be in touch with the Nursing program to see if they could accommodate.
24. On February 28, 2020, Ms. Pomarico called Ms. Zarra unsolicited advising Ms. Zarra that she should consider deferring her admission for a year to see how intense the back surgery would be.

25. Ms. Zarra responded to Ms. Pomarico that she wanted to see how her recovery went before making any decisions about deferral. During this phone call, Ms. Zarra inquired about the request for the accommodation and Ms. Pomarico told Plaintiff not to worry about it, that they would work something out for the accommodation to be made.

26. On March 2, 2020, as scheduled, Ms. Zarra had a Lumbar fusion from L2-S1. The surgery was performed by her neurosurgeon Dr. Andrea Douglas.

27. On April 21, 2020, Ms. Zarra informed Fairfield University, that she would defer her admission to the 2021 cohort based on the recovery being longer than expected. Fairfield University granted the deferment.

28. On October 1, 2020, Ms. Zarra confirmed to Ms. Pomarico her intent to join the 2021 Cohort and expressed her understanding that her accommodation for not lifting more than 20 pounds was still being honored.

29. Ms. Pomarico wrote back stating that she would check on the accommodation and confirm.

30. The next day, Ms. Pomarico emailed Ms. Zarra requesting that Ms. Zarra provide once again all the documentation that had been provided earlier in the year when the formal accommodation request was made in February.

31. Ms. Zarra found the request unusual and irritating but complied stating "I will attach all documentation I have. The final decision was given to me over the phone so I do not have an email for that. When we spoke over the phone a few days before my surgery about possibly deferring, we also discussed that the accommodation for my lifting restrictions would be allowed. Thank you."

32. On October 9, 2020, Ms. Pomarico wrote to Ms. Zarra, "I am meeting with the deans today and I want to discuss your situation about your accommodation. I have a note from your Physician from February. Will your restriction be long term or will you be able to have more liberties as you progress. Can you send me another note from your doctor and ask him to speak to the long term ramifications and if you are able to perform the necessary actions that nurses typically do".

33. The next day, Ms. Pomarico followed up with an alleged excerpt from the handbook and asked Ms. Zarra, "Please share with your doctor and ask her to write a note stating whether or not you can perform the skills necessary for nursing".

34. Ms. Pomarico asked Ms. Zarra whether she would be able to perform CPR and asked that Ms. Zarra ask her doctor for an opinion on that specifically.

35. Ms. Zarra repeatedly conveyed her strong desire to become a psychiatric nurse and that her restrictions should not prevent her from pursuing that field of nursing.

36. The updated doctor's note was provided to Fairfield University on October 21, 2020.

37. Ms. Zarra's lifting restriction was increased to 15 pounds. It was noted that "Caitlyn has not yet reached maximum medical improvement Her current restrictions prohibit her from positioning patients or preforming [sic] CPR."

38. Ms. Pomarico called Ms. Zarra on October 22, 2020 to dissuade Ms. Zarra from pursuing the degree altogether. She stated that the accommodation would make a career in nursing nearly impossible and that she could not in good conscience

allow Ms. Zarra to participate in the program. She then stated that Ms. Zarra should explore other nursing programs to see if they would accommodate her.

39. On November 17, 2020, Ms. Pomarico called Ms. Zarra and shared that in consultation with multiple Deans, the OOA and the University's counsel, Ms. Zarra could participate in the 2021 cohort, but that it would be a lengthy process requiring frequent involvement with her Neurosurgeon. Ms. Pomarico then urged Ms. Zarra to withdraw her application and she feared that Ms. Zarra could become paralyzed and that it would look better if she withdrew than if she was rejected from the program. Ms. Pomarico further added that it would be difficult for Ms. Zarra to find future long-term employment in the nursing field with the necessary accommodations.

40. On November 23, 2020, Ms. Zarra sent Ms. Pomarico an email summarizing many of the previous conversations including what she believed her options to be based on these conversations, where she would be allowed to participate in the 2021 cohort with the necessary accommodations.

41. On December 3, 2020, Ms. Pomarico responded "the decision is yours let me know what you decide after your doctor appointments."

42. On December 7, 2020, Ms. Pomarico confirmed in writing that one of the options that had been provided to her was that she could commence the Second-Degree Nursing Program in May 2021 with the accommodations for lifting and CPR with the opportunity for additional accommodations.

43. On December 15, 2020, Ms. Zarra conveyed to Ms. Pomarico that she would be proceeding with the 2021 cohort.

44. On December 18, 2020, the OOA sent Ms. Zarra an email stating she needed to set up a meeting with OOA to discuss her accommodation.

45. Ms. Zarra did not understand the email, as she had already discussed the accommodation back in February and she been assured by Ms. Pomarico that everything would be okay.

46. Ms. Zarra cooperated and on January 7, 2021, she met with Jillian Kelly from the OOA.

47. After that meeting. Ms. Zarra checked in repeatedly with Fairfield University for a final response.

48. On February 10, 2021, she wrote "I still have a lot to do on my end if allowed to participate in the program. I need to make living and financial arrangements, and as of now would only have 2.5 months to do so. I was hoping to have had some update by now since it has been over a month since our initial meeting and the program is about 3 months away. Thanks!."

49. On February 22, 2021, Ms. Zarra again wrote to Fairfield University, her disappointment with the lack of communication and decision. She conveyed, "As you can imagine, this is a very stressful situation for my family and me. By and large, I am responsible for making financial and housing arrangements before the start of the May 2021 cohort. [. . .] As I am on a waitlist for many low income housing apartments, I cannot pass up the opportunity when one arises. [. . .] We are now exceeding what should be considered a reasonable and customary amount of time for a decision to be made."

50. On March 10, 2021, Fairfield University denied Ms. Zarra the accommodations,

## V.     CAUSE OF ACTION

**COUNT ONE- VIOLATION OF REHABILITATION ACT, 29 U.S.C. § 794 et al.**

1- 50. Plaintiff incorporates paragraphs 1- 50 as if fully set forth herein.

51. Fairfield University is the recipient of federal financial assistance.

52. Plaintiff is an individual with a disability within the meaning of the statute.

53. Plaintiff is a person who has a physical impairment which substantially limits one or more of her major life activities, has a record of such and impairment, or is regarded as having such an impairment

54. With a reasonable accommodation, Plaintiff is otherwise qualified for participation in the program.

55. Fairfield University failed to act in good faith during the interactive process.

56. Plaintiff is being excluded from participation in, being denied the benefits of, and/or being subjected to discrimination under the program, by reason of her disability.

57. Fairfield University had notice of Plaintiff's disability and failed to provide such accommodation in violation of the Rehabilitation Act.

58. Fairfield University exhibited deliberate indifference to the federally protected rights of Ms. Zarra.

59. Fairfield University's refusal to accommodate Plaintiff has caused and continues to cause Plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, emotional distress, loss of enjoyment of life and other non-pecuniary losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court take jurisdiction and grant judgment against the Defendant. Plaintiff prays that the following relief be awarded:

1. All damages to which Plaintiff is entitled to under including, but not limited to economic, liquidated, compensatory, and punitive damages;
2. Attorney's fees, costs and expenses available under law;
3. Pre-judgment interest and post-judgment interest available under law;
4. Such other legal and equitable relief as this Court may deem just and proper.

Done at Westport, Connecticut this June 10, 2021

        THE PLAINTIFF, Caitlyn Zarra

By: */s/ Maria Garcia-Quintner*
      Maria Garcia-Quintner (27568)
      MGQ Law, LLC
      246 Post Road East
      Westport, CT 06880
      203-836-3336
      MGQ@MGQLaw.com

      Counsel for Plaintiff

**Please enter our appearance on behalf of Plaintiff in this matter.**